# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JEREMY DALE HOLLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 4:12-CV-2243-VEH |
| ) | |
| **MADISON INDUSTRIES, INC. OF** ) | |
| **GEORGIA, a corporation, et al.** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Jeremy Dale Holley ("Mr. Holley"), originally filed this personal injury lawsuit in the Circuit Court of St. Clair County, Alabama, on July 5, 2011. (Doc. 1-1 at 1). According to his complaint, Mr. Holley suffered from injuries and damages stemming from a motorcycle collision that occurred on June 8, 2010. (Doc. 1-1 ¶ 8).

More than thirty days but less than one year after receipt of the complaint, Defendant Madison Industries, Inc. of Georgia ("Madison") removed the litigation to federal court on June 22, 2012, asserting diversity under 28 U.S.C. § 1332 as the basis for federal jurisdiction. (Doc. 1 ¶ 1). On July 20, 2012, Mr. Holley filed a

Motion To Remand and Motion for Attorney's Fees, Costs, and Sanctions (Doc. 8) (the "Remand Motion").

Madison filed its opposition to the Remand Motion on August 10, 2012. (Doc. 10). Mr. Holley then filed a reply (Doc. 11) on August 13, 2012, in support of his Remand Motion as well as a separate Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (Doc. 12) (the "Rule 11 Motion") on August 14, 2012.

On August 16, 2012, Madison followed with an opposition to the Rule 11 Motion, and four days later, on August 20, 2012, Madison also filed an Opposed Motion for Leave To Amend Response to Plaintiff's Motion To Remand (Doc. 14) (the "Motion for Leave"). Mr. Holley opposed (Doc. 15) the Motion for Leave on August 23, 2012.

The Remand Motion, the Rule 11 Motion, and the Motion for Leave are now under submission and, for the reasons explained below, the Remand Motion is due to be granted on the procedural ground of untimeliness only, the Rule 11 Motion (and all other sanction-related matters) are due to be carried with the case on remand, and the Motion for Leave is due to be granted.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction Generally

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction.

They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" *Univ. of S. Ala.*, 168 F.3d at 409 (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S. Ct. 418, 425, 30 L. Ed. 2d 383 (1971)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could

3

'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (footnote omitted) (citation omitted). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with the express exception of civil rights cases that have been removed - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review. More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed <u>is not reviewable on appeal or otherwise</u>, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S.

4

404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

### B.     Madison's Burden on Removal

The burden of establishing subject matter jurisdiction for the purposes of removal to this court is on the removing defendant. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Because this case was originally filed in state court and removed to federal court by Best Buy, Best Buy bears the burden of proving that federal jurisdiction exists."). "The court should determine its jurisdiction over the case 'based upon the plaintiff's pleadings at the time of removal.'" *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003).

"[B]ecause the jurisdiction of federal courts is limited, the Eleventh Circuit Court of Appeals favors remand of cases that have been removed where federal jurisdiction is not absolutely clear." *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F. Supp. 1388, 1389 (M.D. Ala. 1998) (citing *Burns v. Windsor*, 31 F.3d 1092, 1095 (11th Cir. 1994)). "In fact, removal statutes are to be <u>strictly construed</u>, with <u>all doubts resolved in favor of remand</u>." *Lowe's*, 995 F. Supp. at 1389 (emphasis

added) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996)).

## IV.   ANALYSIS

### A.   Remand Motion

As stated above, Madison premises its removal exclusively upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams*, 269 F.3d at 1319 (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity mandates: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

#### 1.   Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor*, 30 F.3d at 1367.

In its notice of removal, Madison has effectively met the diversity of citizenship requirement based upon the citizenship and residence of Mr. Holley in Alabama (*see* Doc. 1 ¶ 1), the sole state of citizenship for Madison in Georgia (*id.*); and the other named defendants, who are either citizens of South Carolina or Georgia.

(*Id.*).  Additionally, Mr. Holley does not dispute that complete diversity exists.

### 2. Amount in Controversy Requirement

Regarding this quantitative component, "when Congress created lower federal courts, it limited their diversity jurisdiction to cases in which there was a minimum monetary amount in controversy between the parties." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing *Snyder v. Harris*, 394 U.S. 332, 334 (1969)). Today, the threshold amount in controversy for diversity jurisdiction, excluding interests and costs, is that which exceeds $75,000. 28 U.S.C. § 1332(a) (2012) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . .[.]").

Here, Mr. Holley does not contest satisfaction of the amount in controversy prong, but instead challenges the timeliness of Madison's removal.[1]

### 3. Timeliness

The removal procedure statute, 28 U.S.C. § 1446, contemplates two ways that a case may be removed based on diversity jurisdiction.  The first way (formerly

---

[1] Mr. Holley raises numerous objections to Madison's removal, but because the court agrees with him that Madison's petition is untimely, it does not reach the merits of his other challenges.

referred to as "first paragraph removals")[2] involves civil cases in which the

---

[2] The now-defunct distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112-63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b). The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010) ("As we will explain, *Lowery* was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context."); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007). The recently revised version of the removal procedure statute reads, in relevant part, as follows:

> **(b) Requirements; generally.--**
>
> **(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> **(2)**   **(A)** When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.
>
>   **(B)** Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.
>
>   **(C)** If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

jurisdictional grounds for removal are apparent on the face of the initial pleadings. *See* 28 U.S.C. § 1446(b)(1) (2012).

The second way (formerly referred to as "second paragraph removals"), which is the relevant mechanism in this particular instance, contemplates removal when, *e.g.*, damages are unspecified in the original complaint and the jurisdictional grounds later become apparent through the defendant's receipt of "an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (2012) (emphasis added). The recently revised version of the statute thus expressly clarifies that discovery responses, such as those presented in the instant case, can constitute "other paper" from which diversity jurisdiction can be established. *Id.* § 1446(c)(3)(A) (2012) ("If the case stated by the initial pleading is not removable *solely because* the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, *or in responses to discovery*, shall be treated as an 'other paper' under subsection (b)(3)." (emphasis added)).

As § 1446(b)(3) prescribes, "a notice of removal may be filed *within 30 days*

---

28 U.S.C. § 1446(b). As such, the "first paragraph removals" discussed in prior case law are now embodied in subsection (1), *id.* § 1446(b)(1), and the "second paragraph removals" are now encompassed in subsection (3), *id.* § 1446(b)(3).

*after receipt by the defendant*, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added).

Here, Mr. Holley maintains that Madison was in receipt of discovery responses from him well before June 6, 2012,[3] which unambiguously establish satisfaction of the amount in controversy component. In particular, Mr. Holley points out that <u>as of October 6, 2011</u>:

> Madison, the Defendant that removed this case from St. Clair County Circuit Court to this Court, was perfectly aware that the Plaintiff was seeking at least $101,806.11 in hard damages for medical expenses and property loss, as well as unspecified additional amounts for lost wages, loss of earning capacity, mileage expense, mental anguish, physical pain and suffering and punitive damages. Therefore, Defendant Madison's assertion that its "first notice" that the damages in this case exceeded $75,000.00 came from an attorney's email and objections to Requests for Admissions in June, 2012 is an outright misrepresentation to this Court – their notice came from responses to discovery that the Defendant propounded, and it came on October 6, 2011.

(Doc. 8 at 11).

The record confirms that Mr. Holley served written responses to Madison's

---

[3] Madison's removal hinges upon June 6, 2012, as the triggering date for § 1446(b)(3)'s 30-day clock. (Doc. 1 ¶ 2 ("Plaintiff's counsel has acknowledged via e-mail that damages sought will exceed $75,000. See <u>Exhibit B</u> – E-mail from Andrew Moak dated June 6, 2012")). The court notes that the actual date of the referenced email is June 5, 2012. (Doc. 1-2 at 1). This discrepancy in dates has no impact on the court's timeliness analysis, and the court will continue to use June 6, 2012, as the operative date relied upon by Madison.

10

document requests on October 6, 2011, which included a damages chart itemizing more than $72,000 in medical expenses alone. (*See* Doc. 8-12 at 6-7 (exactly totaling $72,701.11)).  Another piece of written discovery also served on October 6, 2011, values Mr. Holley's total property loss as equaling $26,000.  These two figures combined are appreciably in excess of the jurisdictional minimum.  Further, Mr. Holley's discovery responses constitute "paper" from which it could "first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

In the Motion for Leave, Madison's counsel admits that she "overlooked [the] chart disclosed in discovery" detailing Mr. Holley's medical costs claimed to be causally related to the collision, but insists that her omission "was a mistake and not intentional." (Doc. 14 ¶¶ 3, 4).  In the amended response Madison further states:

> By the Plaintiff's own estimate in its Motion to Remand, it claims that Madison was aware of "at least $101,806.11 in hard damages for medical expenses and property loss," along with other unspecified amounts as of October 6, 2011 [Document 8, p. 11, Plaintiff's Motion to Remand]. By Plaintiff's own estimate, $72,701.11 of said damages were included in a chart of medical billings that the Plaintiff included in written responses to Requests for Production.  <u>However, this additional amount was neither cross-referenced nor set forth in Plaintiff's Verified Answers to Interrogatories specific to the Plaintiff's medical damages</u>. <u>Madison reasonably relied on Plaintiff's verified discovery answers</u>.

(Doc. 14-1 at 4 (emphasis added)).

Thus, Madison does not dispute that it had within its possession discovery responses from Mr. Holley which indicated that the amount in controversy was satisfied and that the case was removable, but apparently contends that such information did not trigger the 30-day clock in October 2011 because the "amount was neither cross-referenced nor set forth in Plaintiff's Verified Answers to Interrogatories specific to the Plaintiff's medical damages." (*Id.*).

Madison offers no authority for the proposition that this court has the discretion to excuse the lateness of Madison's removal merely because Mr. Holley failed to cross-reference his discovery responses, and, relatedly, find that it was reasonable for Madison to rely (and wait) on the email that its counsel received on June 6, 2012, from Mr. Holley's lawyer (*see* Doc. 14-4 at 2 ("[I]f you want to pursue a motion to have us be forced to admit that we are seeking more than 75K in damages, when the time runs, go ahead.")) as the legally cognizable event which transformed the lawsuit into a removable one. Given the dearth of legal support provided, this court is under no obligation to address Madison's perfunctory and underdeveloped attempt to demonstrate the timeliness of its removal. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)

(stating that an argument made without citation to authority is insufficient to raise an issue before the court).

As the United States District Court for the Southern District of Alabama has observed:

> "Judges are not like pigs, hunting for truffles buried in briefs." *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009). An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard. *Id.* As the Court has previously noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126, at *3 (S.D. Ala. Feb. 11, 2011). Therefore, akin to *Amazing Grace*, because Madison has not "fairly presented" its position establishing the timeliness of its removal, no further consideration by the court of this issue is even required.

Moreover, in the absence of any controlling authority that would allow the court to toll § 1446(b)(3)'s 30-day window of removal under the circumstances of a plaintiff's failure to cross-reference his discovery responses, the court is unwilling to follow such an uncharted and peculiar path as Madison has suggested. Accordingly, consistent with the above analysis, the court concludes that Madison's removal on June 22, 2012, was untimely, and that, as a result, Mr. Holley's Remand Motion is

due to be granted in the form of ordering remand only.

### B. Rule 11 Motion

The court does not reach the merits of the Rule 11 Motion (or the remainder of the Remand Motion, which seeks an award of attorney's fees, costs, and sanctions). Instead, the Rule 11 Motion and those other undecided sanction-related issues included in the Remand Motion will all be carried to state court as part of the remand of Mr. Holley's lawsuit.

### C. Motion for Leave

In deciding the merits of the Remand Motion, the court has considered the contents of Madison's Motion for Leave and the related attachments, including the amended written opposition. (Doc. 14-1). Accordingly, the Motion for Leave is due to be granted.

## IV. CONCLUSION[4]

Consistent with the above analysis, this case is due to be remanded to the Circuit Court of St. Clair County, Alabama, on the basis of untimeliness only. Further, Mr. Holley's Rule 11 Motion (and all other sanction-related matters) are due

---

[4] The court is aware that Mr. Holley has repeatedly requested the right to present oral argument. (*See, e.g.*, Doc. 8 at 1; Doc. 11 at 1; Doc. 12 at 1). However, the court finds that holding a hearing is unnecessary due to the straightforward nature of the matters that it has addressed in this opinion, and, accordingly, that request is due to be denied.

to be carried with the case on remand. Finally, Madison's Motion for Leave is due to be granted. The court will enter a separate order.

**DONE** and **ORDERED** this the 27th day of August, 2012.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge